(Decided 9th April, 1891.)

---

THE FIDELITY MUTUAL LIFE ASSOCIATION OF PHILADELPHIA *vs.* RICHARD L. FICKLIN, and others, by their next friend, GEORGE SAVAGE.

*Life insurance—Foreign corporation—Province of the Jury — Warranty in Application for Insurance.*

Under section 297 of Article 23, of the Code of Public General Laws, which provides that a suit may be brought in this State against any foreign corporation holding and exercising franchises in the State, by a non-resident plaintiff, when the cause of action has arisen, or the subject of the action shall be situated

Fidelity Mutual Life Association *vs.* Ficklin, *et al.*

in this State, action may be maintained in this State on a policy of life insurance issued by a Pennsylvania corporation to a resident of Virginia, where the application for insurance, the examination of the applicant and the delivery of the policy, all took place in this State, and at the time and place of the delivery the payment necessary to give it validity was made to the agent of the company authorized to receive it.

According to the terms of a policy of life insurance issued in Maryland by a Pennsylvania company, the assured warranted every answer contained in his application to be "full, complete, and true." By a statute of Pennsylvania it was provided that whenever an application for a policy of life insurance contained a clause of warranty of the truth of the answers therein, no misrepresentation or untrue statement in such application, made in good faith by the applicant, should effect a forfeiture, or be a ground of defence, in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement related to some matter material to the risk. In a suit on the foregoing policy, it was HELD:

That no untrue statement in any of the answers made by the applicant, if made in good faith, was a ground of defence, unless they related to some matter material to the risk, and whether they were made in good faith, or were material to the risk, it was for the jury to decide.

A policy of life insurance issued by a Pennsylvania company, by the terms of which the application for insurance is made a part of the contract, and the assured agrees that every statement and answer contained therein is material, and warrants them "to be full, complete, and true," and further agrees that if any of the answers or statements made, whether made in good faith or otherwise, are in any respect untrue, then the policy and contract shall be null and void, notwithstanding any statute or law to the contrary, is subject to, and governed by the Pennsylvania statute, which provides that no misrepresentation or untrue statement in an application for life insurance, made in good faith by the applicant, shall effect a forfeiture, or be a ground of defence unless it relates to some matter material to the risk.

APPEAL from the Superior Court of Baltimore City.

Richard L. Ficklin, and others, infants under the age of twenty-one years, suing by next friend, brought an

action in the Superior Court of Baltimore City against the Fidelity Mutual Life Association. The cause of action was a policy of insurance on the life of the father of the plaintiffs, which was issued by the defendant. The pleadings were very voluminous; but before the trial, an agreement of counsel was made, providing that all errors of pleading should be waived, and that all matters of law should be submitted to the Court for its ruling by prayers for instructions. The defendant is a body politic duly incorporated under the laws of Pennsylvania. Thomas D. Ficklin, the person whose life was insured, was a resident of the State of Virginia. He made application in the City of Baltimore to a solicitor, who represented the defendant, for insurance on his life; the policy was received by the solicitor in due time, and according to directions, previously given by Ficklin, was delivered to Johnson, Sutton & Co. of the City of Baltimore, with whom Ficklin kept a deposit account. In behalf of Ficklin, they paid the solicitor the sum of money necessary to give effect to the insurance, and also paid in advance the annual dues during Ficklin's life, and kept the policy for him in their safe until after his death, he in the meantime having never seen it. The policy was under the seal of the defendant, and was dated May 13th, eighteen hundred and eighty-seven. The material parts of it are as follows : "In consideration of the application for this policy of insurance, which is hereby referred to and made a part of this contract, and of each and every statement and answer contained therein, which, whether written by his own hand or not, every person accepting or acquiring any interest in this contract hereby adopts as his own, admits and agrees to be material and warrants to be full, complete and true, and to be the only statements and answers upon which this contract is made ;" after stating the pecuniary consideration, it proceeds to state that it "does hereby re-

ceive Thomas D. Ficklin, of Litwalton, County of Lancaster, State of Virginia, as a member of said association, and does hereby insure the life of said member in the sum of fifteen hundred dollars, from the 13th day of May, 1887; and the sum so insured shall become due and payable within sixty days from the date of the periodical mortality assessment, first ensuing the receipt of satisfactory proof of the death of said member, in accordance with Article XIII, of the Association's by-laws;" and it provides for the payment to his children of the sum insured. It also contains this clause "Provided, always, that due notice and satisfactory proof of the death of the insured, and of the just claim of the assured, or any other person as executor, administrator, guardian, or assign, be given to the Association, in accordance with section 1 of Article XIII, of the by-laws;" and also this clause, "and in the event of a breach of warranty or a failure to pay either dues or assessments the day on which they shall become due, then, in either case this certificate of membership and policy of insurance shall be *ipso facto*, null and void, and of no effect whatever."

Ficklin was examined by Dr. Atkinson, the medical examiner of defendant, who wrote Ficklin's answers to the questions contained in the application for insurance. The questions were very numerous, and many of the answers are alleged by the defendant to be untrue. The application signed by Ficklin contains the following passages: "And I hereby declare and agree, that each and every statement and answer contained in this application, is material to the risk, and I hereby warrant all the answers and statements, and each and every one of them, contained herein, whether written by my own hand or not, to be full, complete and true, and it is agreed, that this warranty shall form the basis, and shall be a part of the contract between me and said association, and that it is the consideration of the contract hereby applied for."

Fidelity Mutual Life Association *vs.* Ficklin, *et al.*

"I do further agree, that if any of the answers or statements made and contained herein, are not full and complete, or that if the same or any of them, whether made in good faith or otherwise, are in any respect untrue, then said policy and this contract shall be null and void, notwithstanding any statute or law to the contrary."

"It is further agreed, that the person soliciting or taking this application, as well as the medical examiner, shall be and is my agent, and not that of said association, as to all answers and statements in this application." The policy became forfeited, but on November 26th, 1887, it was reinstated, and renewal receipt forwarded to Johnson, Sutton & Co. in Baltimore. Ficklin died March 2nd, 1888. Proofs of death were furnished to the defendant. A statute of Pennsylvania in the following words, was offered in evidence: "Whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith by the applicant shall effect a forfeiture, or be a ground of defence in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk."

The questions in the Court below were, whether this suit could be brought in Maryland; whether the policy was vacated by untrue statements in the application for insurance; whether certain portions of Dr. Atkinson's testimony were admissible in evidence; and whether the preliminary proof of loss was sufficient. The defendant excepted to the ruling of the Court on these questions, and the verdict and judgment being against it, appealed to this Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, McSHERRY, and BRISCOE, J.

*William A. Hammond,* (with whom was *W. S. Campbell* on the brief,) for the appellant, cited as follows :

*Cromwell & Sloan vs. Royal Canadian Ins. Co.,* 49 *Md.,* 366; *Hubner vs. Eagle Ins. Co.,* 10 *Gray,* 131; *Trasher vs. Everhart,* 3 *Gill & J.,* 244; *Balto. & Ohio Railroad Co., et al. vs. Glenn, et al.,* 28 *Md.,* 321; *Daniels vs. Hudson River Fire Ins. Co.,* 12 *Cush.,* 416; *Thwing vs. Great Western Ins. Co.,* 111 *Mass.,* 109; *Mutual Benefit Life Ins. Co. vs. Wise,* 34 *Md.,* 597; *Supreme Council of American Legion of Honor vs. Green,* 71 *Md.,* 263; *New York Life Ins. Co. vs. Fletcher,* 117 *U. S.,* 519, 534; *Wilcox vs. Hunt,* 13 *Peters,* 378; *State, use of Allen vs. Pitts. & Conn. R. R. Co.,* 45 *Md.,* 41; *Shuttle vs. Thompson,* 15 *Wall.,* 151; *Lippincott vs. Cooper,* 19 *W. N. C.,* 130; *Adams vs. Bachert,* 83 *Penna.,* 560; *Lavery vs. Commonwealth,* 101 *Penn. St.,* 560; *Grand Rapids & Inda. Railroad Co. vs. Martin,* 41 *Mich.,* 667; *Andrevens vs. Mut. R. L. Life Asso.,* 34 *Fed. Rep.,* 870; *Cahen vs. Continental Life Ins. Co.,* 41 *N. Y. Sup. Ct. Rep.,* 296; *Farmers and Drovers Ins. Co. vs. Curry,* 13 *Bush,* 317; *Mutual Aid Society vs. White,* 100 *Penn. St.,* 12; *Ætna Life Ins. Co. vs. France,* 91 *U. S.,* 510; *Jeffries vs. Life Insurance Co.,* 22 *Wall.,* 47; *Union Mutual Life Ins. Co. vs. McMillen,* 24 *Ohio,* 67; *Chase vs. Hamilton Ins. Co.,* 20 *N. Y.,* 52; *Foot vs. Ætna Life Ins. Co.,* 61 *N. Y.,* 575; *Riddlesbarger vs. Hartford Ins. Co.,* 7 *Wall.,* 386; *O'Hara vs. U. B. Mut. Aid Society,* 120 *Penn. St.,* 264.

*Archibald H. Taylor,* (with whom was *George Savage* on the brief,) for the appellees,

Relied on the following authorities: *Cromwell & Sloan vs. Royal Canadian Ins. Co.,* 49 *Md.,* 374; 1 *Woods on Fire Insurance, sec.* 139; *Supreme Council, Am. Legion of Honor vs. Green,* 71 *Md.,* 265, 266; *St. John vs. American Co.,* 2 *Duer,* 429; *Ruse vs. Mutual Benefit Life Ins. Co.,* 23 *N. Y.,* 521; 1 *Story on Contracts, sec.* 803, *and note* 6;

*Penobscot & Kennebec Railroad Co. vs. Bartlett, &c.;* 12 *Gray*, 247; 2 *Kent's Com.*, [652,] *459; *Story on Conflict of Laws*, 175, *note (a) to* 177; *Bank of Augusta vs. Earle,* 13 *Pet.*, 519, 588; *Central Railroad vs. Carr,* 76 *Ala.,* 391; *Dauphin & La Fayette Streets Railway Co. vs. Kennerly,* 74 *Ala.,* 589; *Grangers' Life and Health Ins. Co. vs. Kamper,* 73 *Ala.,* 343; *Glenn, Trustee vs. Liggett,* 135 *U. S.,* 538; *McKim vs. Glenn, Trustee,* 66 *Md.,* 479; *Glenn, Trustee vs. Williams,* 60 *Md.,* 107; *Glenn, Trustee vs. Howard and Savage,* 65 *Md.,* 53; *Green's Brice's Ultra Vires,* 62, 63, *notes (a) and (b),* 482; *Barton vs. Port Jackson, &c. Plank Road,* 17 *Barbour,* 397; *Angell and Ames on Corp.,* secs. 255, 256, 273; *Union Mutual Life Ins. Co. vs. Reif,* 36 *Ohio,* 596; *Insurance Co. vs. Foley,* 105 *U. S.,* 350; *Savage vs. Russell & Co.,* 84 *Ala.,* 103; *Erie Railway Co. vs. Union Locomotive and Express Co.,* 35 *N. J. L.,* 240; *Manhattan Life Ins. Co. vs. Francisco,* 17 *Wallace,* 673; *New York Life Ins. Co. vs. Flack,* 3 *Md.,* 341; *Mutual Life Ins. Co. vs. Stibbe,* 46 *Md.,* 302; *Mutual Benefit Life Ins. Co. vs. Wise,* 34 *Md.,* 584; *Insurance Co. vs. Wilkinson,* 13 *Wall.,* 232; *Geib vs. Insurance Co.,* 1 *Dillon,* 441; *Whiteford vs. Ins. Co.,* 31 *Md.,* 221; *Bersche vs. Ins. Co.,* 31 *Mo.,* 557; *Armenia Fire Ins. Co. vs. Paul,* 91, *Penna.,* 522; *Wilson vs. Hampden Co.,* 4 *R. I.,* 159; *Ins. Co. vs. Haven,* 95 *U. S.,* 242; *Martin vs. Ins. Co.,* 44 *N. J. L.,* 487; *Jersey Ins. Co. vs. Carson,* 44 *N. J. L.,* 210; *Miller vs. Mutual Co.,* 31 *Iowa,* 255; *Hogle vs. Guardian Co.,* 4 *Abbot's Pr.,* N. S., 351; *Insurance Co. vs. Foley,* 105 *U. S.,* 350; *Hall vs. People's Mutual Fire Ins. Co.,* 6 *Gray,* 191; *Liberty Hall Association vs. Housatonic Mutual Fire Ins. Co.,* 7 *Gray,* 265; *Hoffman vs. Ætna Ins. Co.,* 32 *N. Y.,* 405; *Woods on Fire Ins.,* sec. 90, *page* 207, sec. 60, *page* 161, sec. 62, *page* 168, sec. 174, *page* 404, sec. 58, *page* 140, *page* 405, *note; May on Fire Insurance, page* 409, sec. 306; *Bliss on Life Insurance, page* 67, *and page* 121, sec. 81; *Moulor vs. Insurance Co.,* 101 *U. S.,*

708, *Home Mutual Life Association vs. Gillespie*, 110 *Pa.*, 89; *Swartz vs. Insurance Co.*, 15 *Phila. R.*, 206, 207; *Grattan vs. Metropolitan Co.*, 80 *N. J.*, 281; *Penn. R. R. Co. vs. Miller*, 132 *U. S.*, 75; *Chicago R. R. Co. vs. Minnesota*, 134 *U. S.*, 418, 455; *Chicago Life Ins. Co. vs. Needles*, 113 *U. S.*, 574; *Witherell vs. Marine Ins. Co.*, 49 *Me.*, 200, 203; *Viele vs. Germania*, 26 *Iowa*, 51; *Post vs. Ætna*, 43 *Barbour*, 361; *Balto. Fire Ins. Co. vs. McGowan*, 16 *Md.*, 47.

BRYAN, J., after stating the case, as above reported, delivered the opinion of the Court.

Under the agreement of counsel we are required to consider the questions of law arising on this appeal, without reference to the pleadings. By the Act of 1868, chapter 471, section 211, it was provided that a suit might be brought in this State "against any corporation not incorporated under its laws, but deemed to hold and exercise franchises herein, or against any joint stock company or association doing business in this State by a resident of this State, for any cause of action; and by a plaintiff, not a resident of this State, when the cause of action has arisen, or the subject of the action shall be situated in this State." This section is incorporated in the Code, and is the two hundred and ninety-seventh section of Article 23 of the Public General Laws. The application for insurance was made in Baltimore, the examination of the applicant took place there, and the policy was delivered there, and at the time and place of the delivery the payment necessary to give it validity was made to the agent of the defendant authorized to receive it. The acts were performed in Baltimore, which were necessary to bind the defendant, and to entitle the assured to the benefits of the contract of insurance. These acts gave existence to the cause of action, and bring this case clearly within the provisions of the Act of Assembly.

According to the terms of the policy, the assured warrants every answer contained in his application "to be full, complete and true." By the ordinary principles governing policies of insurance, this warranty would impose on the plaintiffs the *onus* of proving the literal truth of these answers. *Mutual Benefit Life Ins. Co. vs. Wise*, 34 *Md.*, 597. But the statute of Pennsylvania, which was offered in evidence, enacts that in such case no misrepresentation or untrue statement in the application, made in good faith by the applicant, shall effect a forfeiture, or be a ground of defence, unless it relate to some matter material to the risk. It is beyond question that the powers and capacities of a Pennsylvania corporation are conferred and regulated by the law of that State. Without its authority it could not exist at all; every contract it makes, every act it performs, every right it acquires and every obligation it assumes, must be by virtue of the same authority. It may make contracts, transact business, sue and be sued beyond the limits of the State of its origin. But all these transactions are by the permission of the State where they occur, and not by virtue of any right belonging to the corporation. Everywhere, within and without the State which created it, its contracts are limited, construed and sustained according to its charter, and the laws which affect its operation. In *McKim vs. Glenn, Trustee*, 66 *Md.*, 484, this Court said: "It is a familiar principle, that a corporation, and all who deal with it, are bound by the law of its creation, and all such laws as may be legitimately prescribed for its government by the sovereign authority from which it derives its corporate existence."

It appears to us, therefore, that the inquiry in reference to the answers in the application for insurance ought to be not only whether they were true, but also whether they were made in good faith, and whether they related to some matter material to the risk. The warranty made

every statement in the application so vitally material to the validity of the contract, that it imposed on the assured the necessity of proving that they were all literally true. The statute made a great change in this respect. It introduced two new questions for determination before the contract could be declared invalid, viz., the good faith of the applicant in making his statements, and the materiality to the risk of the matters involved in them. Before the statute there could be no inquiry with reference to the risk; every statement was material, and if untrue in any respect, however irrelevant to the risk, the policy was invalidated.

Dr. Atkinson in his testimony states that he wrote the applicant's answers, because the medical director of the defendant preferred that he should write them; that in answer to the question as to the occupation and business of the applicant, he wrote the answer "country merchant," that he wrote it down as "country merchant," because he understood that country merchants sell all kinds of merchandise, wines, whiskey and everything else. He states that he was in a hurry when he made out the application, because Ficklin wished to leave the city; "he was in a state of anxiety to catch his boat." In respect to the question in the application about the sale or manufacture of malt or spirituous liquors, he testified: "I can't, at this interval, tell whether I pointed out that; there were two, and possibly four questions included in that question." * * * "There was enough said in general conversation in the half hour I was with him, to satisfy me with the answer I put down; what he said left the inference on my mind;" and later, "I try to stand between the company and danger always;" and later witness said: "I can't give any *verbatim* expressions that he made, I can only give my inference, and in analyzing those inferences and reducing it to a monosyllable, I put the 'No;' now,

whether the man regarded the word manufacture or the word sale as predominating, I can't tell;" and later, "Whether he told me he sold as an agent, or whether he told me as some of the witnesses said, as Dr. Lewis said on Friday, that he had sold probably 15 years before with Mr. Rock, or some else, or he desisted for some-time, or a number of years, or had an agent and sold through that agent, I can't tell." He further testified: "And in respect to question 14 in policy, and all the fine-print following, I know he didn't review his answers and I didn't read it over myself to him, because I didn't see any necessity; I told him the purport of it," viz., "I hereby declare the answers given to the medical examiner are true to the best of my knowledge." In the application, the question is asked "Have you ever been connected in any way with the sale or manufacture of malt or spirituous liquors?" and it is answered "No." Upon the question of the applicant's good faith in making his answers to the various questions in the application, it was proper that every thing which took place at the time of the examination should be laid before the jury. Good faith and fraud are questions of intention; in investigating intention, it is impossible to exclude the circumstances under which an act was done. Purposes, motives, objects and inducements would all be involved in obscurity, unless we could be informed of the accompanying facts which marked the character of the transaction.

The proofs of death standing alone were sufficient to establish the loss as a preliminary question. By the terms of the policy the plaintiffs were bound to furnish to the defendant "satisfactory proof of the death of the insured and of the just claim of the assured." The facts stated in the proofs of death show a good *prima facie* case for the plaintiffs. The death was clearly proved. The certificate of Dr. F. W. Lewis contained

in the proofs stated that he had attended the deceased prior to his last sickness: "Only for colic from overeating, once in August, 1886, and once prior." The physician also stated that: "He complained at times during the past 12 months of a palpitation or shortness of breathing, tho. was never prescribed for, for the complaint." He was asked "Had deceased consulted any other physician to your knowledge? If so, whom, when and for what diseases? and he answered: "None other to my knowledge." The remote cause of death was diabetes; the immediate cause, bloody evacuations from the bowels. Two other witnesses in their certificates mention the palpitation of the heart, and they both state that the deceased did not consult or have the attendance of any other physician prior to the one above mentioned. These certificates are in conflict with answers of the deceased made in his application, wherein he stated that Dr. M. Lewis was his usual medical attendant, and that he had not consulted any other medical man within the past ten years, and that his last sickness was an attack of ague and fever eighteen years previously. But these certificates do not impugn a claim, otherwise just, in the absence of proof that the answers in the application were not made in good faith, and that they were material to the risk. It was necessary that the plaintiffs should offer in evidence " the proofs of death," for the purpose of showing that they had complied with the requirements of the policy, but they were not admissible for any other purpose, and their sufficiency was a question for the Court to decide. *Mutual Life Insurance Company vs. Stibbe,* 46 *Md.,* 312. But if they had been in evidence before the jury on the issues in the case, they would have been considered in connection with the evidence of Dr. F. W. Lewis, who testified that he had succeeded his father, Dr. M. Lewis, upon his death several years previously, as Ficklin's family physician;

Fidelity Mutual Life Association *vs.* Ficklin, *et al.*

that he never in his life except on two occasions knew of Ficklin's complaining at all; and those were slight attacks of indigestion, and that when he used the word "*colic*" in his certificate contained in the proofs of death, he did not mean technically colic, unless every attack of indigestion, or pain in the stomach must be called colic, and this was not his opinion; that Ficklin never suffered from venal, hepatic or bilious colic. Upon the whole evidence on this point, it would have been competent for the jury to decide whether the answers in the application were made in good faith, and whether they were material to the risk.

Some of the prayers offered in behalf of the defendant maintained that the suit could not be brought in this State; some that certain answers made in the application were untrue, and that therefore the plaintiffs could not recover, but they did not submit to the jury the questions of good faith and materiality to the risk; some sought to leave to the jury questions of fact arising on the "proofs of death;" some maintained that the proof of death was not sufficient, because it did not show a just claim; others sought to withdraw from the jury the question of materiality to the risk, insisting that as matter of law certain answers in the application were material to the risk; others maintained that the Pennsylvania statute had no application to the case; and one sought to exclude from the jury that portion of the evidence of Dr. Atkinson, which tended to show that Ficklin did not read or know of the contents of some portion of the application. All of these prayers were rejected by the Court. What we have said will show that we approve of this ruling. The prayers granted in behalf of the plaintiffs are in accordance with the views which we have expressed.

*Judgment affirmed.*

(Decided 9th April, 1891.)

Fidelity Mutual Life Association *vs.* Ficklin, *et al.*

A motion for a re-hearing was made by the appellant on the 5th of May, 1891. The motion was overruled.

BRYAN, J., delivered the opinion of the Court as follows when overruling the motion:

The learned counsel for the appellant have moved for a re-argument in this case. They base their motion on the supposition that the Court overlooked or disregarded certain clauses in the application for insurance. These clauses were quoted word for word in the statement prepared by the Court, which preceded the opinion and which set forth the facts on which it was founded. The Pennsylvania statute enacted that "whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant shall effect a forfeiture * * * * * * * * unless such misrepresentation or untrue statement relate to some matter material to the risk." This is a most clear declaration that under the circumstances mentioned, the policy shall not be forfeited; in other words, that it shall be a valid and binding contract. It is part of the nature and essence of the warranty that it should have the effect stated. It is a condition on which it is permitted to have existence and operation; as much so, as if it had been written in express words on the face of the policy. The contract of insurance must be made in subordination to the statute, and must have the legal effect which the statute attributes to it, and none other. Whatever form of words may be used, the legal effect of the warranty must be such as the statute impresses upon it. It was the intention of the Legislature to prevent insurance companies from forfeiting policies by means of warranties, as they had been previously construed, and to enforce the new construction set forth in the statute. These corporations

manifestly have not the legal capacity to make a contract which should give a construction to a warranty in opposition to that which the law has established. And, of course, they cannot, by virtue of any agreement, acquire the competency to do what the law forbids.

It is stated in the policy that the application for insurance is made a part of the contract, and that the assured agrees that every statement and answer contained therein is material, and warrants them "to be full, complete and true." And in the application, the applicant declares and agrees that every statement and answer are material to the risk, and he warrants them all. He also states as follows: "I also agree that if any of the answers or statements made and contained herein * * * * * * whether made in good faith, or otherwise, are in any respect untrue, then said policy and this contract shall be null and void, notwithstanding any statute or law to the contrary." In other words, the statute is to be entirely overthrown and set aside; and the insurance company, under the guise of an agreement, is to acquire the power to accomplish the very result which the statute intended to prevent. Statutes would be very ineffective if they could be defeated in this way. If an untrue statement material to the risk is warranted, the policy is void; but the invalidity of the policy depends upon the fact whether the statement is material to the risk. The materiality of the statement is the indispensable condition on which the invalidity of the policy depends, and it must be established by proof. It is not competent to substitute for this proof an agreement of the parties that it should be considered material. Neither can an agreement be valid which gives an effect to a warranty, which is in defiance of the statute. The Legislature enacted a rule for the regulation of the contracts of insurance companies, which is a matter of public interest and concern. The operation of this rule does not depend

on the agreement of these corporations to adopt it as a basis of their contracts; on the contrary, the rule prescribes the scope and effect of policies of insurance, and authoritatively determines the duties and obligations which arise from them.

We have discovered no reason for another argument in this case.

*Motion overruled.*

(Decided 13th October, 1891.)